No. 70,111

STATE OF KANSAS, *Appellee*, v. ADRIAN ROBINSON, *Appellant*.

(883 P.2d 764)

Opinion filed October 28, 1994.

*B. Kay Huff*, special appellate defender, of Lawrence, argued the cause, and *Jessica R. Kunen*, chief appellate defender, of Topeka, was with her on the brief for appellant.

*Michael Grosko*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This criminal case addresses whether Kansas recognizes the crime of attempted felony murder. Adrian Robinson was convicted of aggravated robbery (K.S.A. 21-3427) and attempted first-degree murder (K.S.A. 1992 Supp. 21-3301 and K.S.A. 1992 Supp. 21-3401). Our jurisdiction is under K.S.A. 1992 Supp. 22-3601(b)(1) (a direct appeal upon imposition of a maximum sentence of life imprisonment).

We reverse the attempted first-degree murder conviction and remand for a new trial on this charge. Robinson does not question his conviction of aggravated robbery.

## Facts

Officer Conchola found Yvonne Slater, the victim, on the living room couch in Slater's apartment. She had been shot several times. Slater told the officer that two men confronted her in the hallway, demanding her purse. She did not give them the purse, and they shot her. At trial, Slater identified Robinson as the shooter.

A surgeon at the Kansas University Medical Center operated on Slater the evening of the shooting. He testified that upon checking for bullet damage, the surgical team discovered that none of the bullets had tracked in through the subcutaneous fat. Slater had no internal injuries. During redirect examination, the prosecutor asked, "Doctor, would it be fair to say that Yvonne Slater did not suffer even more serious injury or possibly death because she's pretty overweight and the underlying tissue absorbed the bullets?" The doctor replied, "That's correct."

## Attempted Felony Murder

"The standard of review applied to jury instruction error requires an objection before the jury retires, stating distinctly the matter objected to and the grounds for the objection, unless the instruction or the failure to give the instruction is clearly erroneous. K.S.A. 22-3414(3)." *State v. Thomas*, 252 Kan. 564, Syl. ¶ 6, 847 P.2d 1219 (1993). Defense counsel objected to the attempted murder instruction. The stated objection, however, did not set forth the specific grounds advanced on appeal: (1) that the crime of attempted felony murder does not exist, and (2) that the instruction diminished the State's burden of proof. Instead, defense counsel said the instruction would confuse the jury and later argued that the attempted premeditated murder instruction more precisely fit the facts. Because the trial court did not have an opportunity to rule on the objections advanced on appeal, the clearly erroneous standard of review applies.

The trial court instructed the jury concerning alternate theories of attempted premeditated first-degree murder and attempted felony murder. Robinson and a codefendant, Mario Spivey, were tried together.

## The State's Contention

Robinson robbed Slater at gunpoint. He and Spivey took Slater's property, and one of them then said, "Pop the bitch." She was shot several times. These facts are reflected in the information, which alleged the overt act in support of the attempt charge. ("Robinson did knowingly and willfully commit an overt act, to-wit: after robbing one Yvonne Slater, they shot her four times in the abdomen and once in the arm, toward the perpetration of the crime of First Degree Murder, as defined by K.S.A. 21-3401, with the intent to commit said crime, but failed or was prevented or intercepted in the execution of said crime.") The information charged Robinson specifically with shooting Slater after the robbery.

The jury was instructed that it could convict Robinson of attempted first-degree murder if it found the shooting was intentional, deliberate, premeditated, and with intent to kill, or if the shooting occurred during the commission or attempted commission of an aggravated robbery. In closing argument, the State explicitly directed the jury's attention to the felony-murder aspect of the murder instruction. The jury returned a general verdict of guilty to attempted first-degree murder, leaving no indication whether it relied on the premeditation or felony-murder theory.

## Discussion

We held in *State v. McCowan*, 226 Kan. 752, 759, 602 P.2d 1363 (1979), *cert. denied* 449 U.S. 844 (1980): " '[P]remeditated murder and felony murder are not separate or different offenses. The statute merely provides alternate methods of proving the deliberation and premeditation required for a conviction of first degree murder under K.S.A. 21-3401.' "

The State acknowledges that no Kansas cases have directly addressed the question of whether attempted first-degree felony murder is a crime. It observes, however, that a similar factual situation occurred in *State v. Turbeville*, 235 Kan. 993, 686 P.2d 138 (1984), a case in which a person was shot during an attempted robbery. The defendant in *Turbeville* was convicted of attempted first-degree murder.

The State's reliance on *Turbeville* is misplaced. The issue in *Turbeville* was whether attempted murder and aggravated battery convictions were multiplicitous. We held that they were and set aside Turbeville's conviction and sentence for aggravated battery. 235 Kan. at 995.

Kansas does not recognize the crime of attempted felony murder. The application of the felony-murder doctrine in Kansas always has depended on the existence of an actual homicide. The fact that Slater survived the shooting bars application of the felony-murder doctrine. See, *e.g., State v. Underwood*, 228 Kan. 294, 302, 615 P.2d 153 (1980) ("[T]he elements of malice, deliberation and premeditation which are required for murder in the first degree are deemed to be supplied by felonious conduct alone if a homicide results.").

The State has cited no authority to support its claim that attempted felony murder is a crime. We have recognized that attempted murder is a specific intent crime. See *State v. Falke*, 237 Kan. 668, 683, 703 P.2d 1362 (1985). On the contrary, felony murder is not a specific intent crime. *State v. Walker*, 252 Kan. 279, 298, 845 P.2d 1 (1993). We held in *State v. Lucas*, 243 Kan. 462, Syl. ¶¶ 1 and 2, 769 P.2d 90 (1988), *aff'd on rehearing* 244 Kan. 193, 767 P.2d 1308 (1989), that the purpose of the felony-murder doctrine is to deter those engaged in felonies from killing negligently or accidentally and the doctrine should not be extended beyond the rational function which it was designed to serve. *Lucas* implicitly recognized that a homicide must occur for the felony-murder rule to apply. We have declined to extend the doctrine beyond its legislative rationale of deterring foreseeable deaths that occur during an inherently dangerous felony. The State cannot invoke the felony-murder doctrine and transferred intent without first proving a homicide.

Moreover, the attempted felony-murder instruction erroneously diminished the burden of proof required for attempted first-degree murder. Due process requires the State to prove every element of a crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). The attempted felony-murder instruction given in the instant case di-

minished the State's burden to prove specific intent to kill. K.S.A. 1992 Supp. 21-3301 establishes three essential elements for an attempt: (1) the intent to commit the crime; (2) an overt act toward the perpetration of the crime; and (3) a failure to consummate it. The State, to convict a defendant of a crime, must show the commission of an overt act plus the actual intent to commit that particular crime. *State v. Garner*, 237 Kan. 227, 238, 699 P.2d 468 (1985). Consequently, an attempted crime requires specific intent, as opposed to general intent. See *State v. William*, 248 Kan. 389, 401, 807 P.2d 1292, *cert. denied* 116 L. Ed. 2d 89 (1991) ("One element of an attempt is intent to commit the crime." "It is the intent of the accused to attempt to commit the crime that is at issue.").

To establish the crime of attempted first-degree murder, the State would have to prove specific intent to commit first-degree murder. By contrast, under the crime of felony murder a defendant can have a less culpable mental state, short of specific intent to kill (*i.e.*, recklessness, negligence, or an accident). Felony murder in Kansas depends upon transferred intent to supply the malice, deliberation, and premeditation elements. One cannot intend to commit an accidental, negligent, or reckless homicide. The specific intent to commit a crime is a more culpable mental state than negligence or recklessness. Once the State alleged that Robinson attempted first-degree murder, it assumed the burden of proving that he specifically intended to cause the victim's death. The State sought to avoid this burden of proof by arguing that the commission of the underlying felony supplied the requisite intent.

We have relied on the transferred intent rationale as a basis for the propriety of recognizing the crime of felony murder. See *State v. Wilson*, 220 Kan. 341, Syl. ¶ 2, 552 P.2d 931 (1976), *overruled on other grounds* 226 Kan. 308, 597 P.2d 1108 (1979). The transferred intent rationale does not apply, however, when the murder is not completed.

Other jurisdictions that have addressed the question reject the notion that attempted felony murder is a crime. *People v. Viser*, 62 Ill. 2d 568, 581, 343 N.E.2d 903 (1975); *Head v. State*, 443

N.E.2d 44 (Ind. 1982); *People v. Burress*, 122 App. Div. 2d 588, 505 N.Y.S.2d 272, *lv. to appeal denied* 68 N.Y.2d 810 (1986); *State v. Bell*, 785 P.2d 390 (Utah 1989). See *State v. Huff*, 469 A.2d 1251 (Me. 1984); *Keys v. State*, 104 Nev. 736, 740, 766 P.2d 270 (1988).

The instruction and general verdict form did not require the jury to unanimously find that Robinson intended to commit premeditated murder. The jury returned a general verdict of attempted first-degree murder. In *Stromberg v. California*, 283 U.S. 359, 367-68, 75 L. Ed. 1117, 51 S. Ct. 532 (1931), the Supreme Court recognized that a general verdict of guilt could not stand if the jury relied on two or more independent grounds, one of which was insufficient. See *Zant v. Stephens*, 462 U.S. 862, 881, 77 L. Ed. 2d 235, 103 S. Ct. 2733 (1983). See also *State v. Garcia*, 243 Kan. 662, 670-71, 673, 763 P.2d 585 (1988) (reversing conviction where one of two alternate theories advanced by the State was not supported by sufficient evidence).

The general verdict form makes it impossible to tell on which ground the jury relied. A legally erroneous ground for the conviction may have been the basis for the jury's finding of guilt. The attempted felony-murder instruction was clearly erroneous. The conviction and sentence for attempted first-degree murder are set aside.

Robinson briefed the contention that the jury panel was not properly put under oath before voir dire. During oral argument, counsel for Robinson withdrew the jury panel issue.

Reversed and remanded with directions to grant Robinson a new trial on the charge of attempted first-degree murder.