NOT DESIGNATED FOR PUBLICATION

No. 123,011

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SAMUEL T. HALEY,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sumner District Court; WILLIAM R. MOTT, judge. Opinion filed October 22, 2021. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., CLINE, J., and BURGESS, S.J.

PER CURIAM:  The State charged Samuel T. Haley with possession of methamphetamine, battery of a law enforcement officer, and interference with law enforcement—all of which were based on incidents that occurred at the Kansas Star Casino. On appeal, Haley argues (1) there was insufficient evident to support his conviction for interference with law enforcement; (2) the district court abused its discretion when it denied Haley's request to represent himself during trial; and (3) the district court committed reversible error by advising Haley of his right to testify, claiming

1

it influenced him to waive his right against self-incrimination. Haley's arguments are unconvincing, and we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2017, the State charged Haley with the following three counts, each based on events that took place in February 2017 at the Kansas Star Casino: (1) possession of methamphetamine, in violation of K.S.A. 2016 Supp. 21-5706(a); (2) battery of a law enforcement officer, in violation of K.S.A. 2016 Supp. 21-5413(c)(2)(B); and (3) interference with law enforcement, in violation of K.S.A. 2016 Supp. 21-5904(a)(3).

The case proceeded to a jury trial, which took place over a two-day span in January 2019. The State's first witness was Nicole Kirkhart, a housekeeper at the casino. She testified that, on the day of the incident, she found a small, clear package filled with something that looked like rock candy on the casino floor. After she found it, she called her supervisor over the radio, who then called security.

The State then called Phillip Berringer, the surveillance agent at the casino, as their next witness. Berringer testified that State's exhibit 1 included the videos that he saved at the request of Joseph Meyers—an enforcement agent for the casino—and that State's exhibit 2 was essentially a table of contents for the videos contained in State's exhibit 1. Berringer testified that (1) the video from camera 4138 overlooked the main slot floor and showed the bag being dropped and the housekeeper subsequently finding it; (2) the video from camera 1049 depicted everything that happened while Haley was inside of the casino's holding cell; and (3) the video from camera 1051 also depicted the holding-cell incident, but from a view outside of the cell. Before playing the videos in open court, the State asked for a recess to make sure they were properly working.

The trial reconvened after the recess. Outside of the jury's presence, the judge brought to everyone's attention that, during the break, Haley approached him in the bathroom and asked what he needed to do to complain about his counsel's ineffective assistance. The judge "felt like [he] needed to . . . give [Haley] a chance" to go through each instance of what he believed amounted to ineffective assistance of counsel "in the proper forum, not the bathroom." After the judge heard and rejected each of the arguments, Haley requested to "go pro se," explaining "[w]ithout effective counsel, I'm going to have to do it myself." After taking a break to research the law, the judge applied caselaw indicating that the right to self-representation is unqualified if the defendant makes the request before the trial starts and that district courts have discretion to deny such a request once the trial has started. The court applied the considerations from the caselaw and denied Haley's request for self-representation. Immediately after this denial, Haley stated, "[U]nequivocally, I want to represent myself," but the court again denied his request.

Berringer's direct examination recommenced and, during that time, the State published the videos in State's exhibit 1. Relevant to one of Haley's issues on appeal, the State played the video from camera 1049, which depicted the view from inside of the casino's holding cell. The video showed Haley standing in the open door of the cell, and one of the officers can be heard asking Haley to have a seat, but he continues to stand at the door and does not enter the cell. Another officer can be heard telling Haley that, at the end of the day, he would only be in there for 30 minutes. The video then shows the officers pushing Haley into the cell and onto a bench, where he briefly stays seated as the officers turn towards the door to exit the cell. Haley then charges towards the door, running into one of the officers. In response, the officers push Haley back onto the bench and attempt to handcuff him. The officers can be heard commanding Haley multiple times to put his hands behind his back, and the struggle to handcuff Haley continued for several minutes. After Haley was handcuffed, an officer informed him that he was under arrest.

On the second day of trail, the State called Joseph Meyers to testify. Meyers testified he was on duty the date of the incident and heard radio traffic about suspicious activity. He walked to the scene, along with enforcement agent Jason Sanderholm and security supervisor Richard Light, where they discovered a small bag with a crystal-like substance on the casino floor near some slot machines. After Meyers picked up the bag, a call was made to the casino surveillance department to attempt to locate where the bag originated from. Meyers and Sanderholm walked to the surveillance department, and by the time they arrived, the surveillance department had already found out where they believed the bag had come from. After viewing the video "several times" at the casino surveillance department, Meyers testified it looked like "the suspect walking, a portion [where] there was no packet on the ground, [the suspect] arrived there, and after he departed, directly after he departed, his feet cleared the area, [and] you see the packet in question." Meyers testified that he saw a thin white male—later identified as Haley—wearing a red polo and blue jeans in the video, and he asked the surveillance department if they could locate that person. The surveillance department called Meyers and told him they had located the suspect. Meyers testified that he walked up to Haley with his badge around his neck, identified himself as Agent Meyers with the Kansas Racing and Gaming Commission, and asked Haley if the bag was his; Haley gave Meyers a slight head nod. Meyers told Haley they were going to go to the back of the casino to test the contents of the baggie and, if the test came back negative, Haley would be free to leave. Meyers continued:

"A. When we got back to the back of the [casino], we have our detention room. The casino is required to have, like, a holding area . . . . So that's where I was going to have him for the duration of the test, which would have just taken a few minutes.

"When we got to the room, at that point there was some hesitancy going in there. He initially tried to come out, pushed him back there, [s]tay here. Wait, wait. I need to go test this. At that time, when I was putting him back in the room, the door completely closed, so I had to buzz my way out. I believe Richard Light used his badge, which can

4

open up the door again. And then the suspect ran directly toward the door. I was in the way of the door, and he ended up hitting me, and we had to push him back into the room. And at that time, it was like definitely handcuff this guy, and he fought pretty darned hard. He did not want to be handcuffed. He was tensed up, resisting. Multiple commands had been given to put your arms behind your back. He didn't want to do that. It was definitely more of a fight than it should have been."

The State then asked Meyers, "What are the routine things that you do when you place someone under arrest?" Meyers responded that he handcuffs the person and performs a search incident to arrest. At that point, the State asked Meyers:

"Q: Okay. So immediately upon the suspect running into you, you immediately went to handcuffing him. So is that the point in time where you placed him under arrest or is there some other point in time that you placed him under arrest?
"A: Correct. He was under arrest when he struck me. When he ended up running into me. It was he was—he was under arrest. And I believe I told him that after the fact he was. You're under arrest for possession of meth and interference with law enforcement, battery of a law enforcement officer."

The State called Sanderholm as its next witness, and he testified that Haley was led into the holding room and then attempted to run back out. In the process of trying to run out of the holding room, Haley hit Meyers with his shoulder. Sanderholm indicated that after struggling for a couple of minutes, although to him it seemed longer, they physically restrained Haley with handcuffs.

After the State rested its case, the district court considered and denied Haley's motion for judgment of acquittal.

Outside of the presence of the jury, the court asked defense counsel if Haley was going to present any evidence, and counsel indicated that Haley wanted to testify. The judge then informed Haley that he had both a constitutional right to testify and a

5

constitutional right not to testify and that the decision was ultimately his to make. After discussing these rights with Haley, the judge asked him if he still wanted to testify, and Haley confirmed that he did.

Haley then proceeded to testify on his own behalf. During cross-examination, the State asked Haley if he physically resisted being handcuffed, to which Haley responded, "Absolutely."

The jury ultimately found Haley not guilty of possession of methamphetamine but guilty of both battery against a law enforcement officer and interference with law enforcement.

The district court sentenced Haley to an 11-month prison sentence for his interference with law enforcement conviction and a 12-month jail sentence for his battery against a law enforcement officer conviction, which were to be served consecutively. Haley timely appealed.

DISCUSSION

I. *There was sufficient evidence to support Haley's conviction for interference with law enforcement, as set forth in the jury instruction.*

Haley argues that there was insufficient evidence to support his conviction for interference with law enforcement as set forth in the jury instructions. Haley's specific argument is that the jury instruction identified the "official duty" as Meyers arresting him but not arresting *and handcuffing him*. Haley claimed that "the evidence produced at trial did not support a finding that Haley hindered Meyers in the performance of that official duty," i.e., the official duty of arresting Haley.

6

Haley appears to be challenging the sufficiency of the evidence to support the third required finding in the jury instruction, set forth below, for the charge of interference with law enforcement:

"The defendant is charged with interference with law enforcement by obstructing official duty. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
"1. Joseph M[e]yers was discharging an official duty, namely conducting an arrest for possession of methamphetamine.
"2. The defendant knowingly obstructed, resisted, or opposed Joseph M[e]yers in discharging that official duty.
"*3. The act of the defendant substantially hindered* or increased the burden of *the officer in the performance of the officer's official duty.*
"4. At the time the defendant knew or should have known that Joseph M[e]yers was a law enforcement officer.
"5. This act occurred on or about the 23rd day of February, 2017, in Sumner County, Kansas." (Emphases added.)

As an initial matter, the State asserts that the invited error doctrine applies here because Haley requested the jury instruction. However, the invited error doctrine is not applicable here because Haley is challenging the sufficiency of the evidence, not claiming there was a jury instruction error.

*Preservation*

In his brief, Haley does not reference the location in the record on appeal where he raised this issue below. Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 36) requires the appellant to include in the appellant's brief "a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on. Ordinarily, if the issue was not raised below, there must be an explanation why the issue is properly before the court." However, a criminal defendant is not required to challenge the sufficiency of the

7

evidence before the trial court in order to preserve it for appeal. *State v. Clary*, 47 Kan. App. 2d 38, 41, 270 P.3d 1206 (2012).

*Standard of Review and Applicable Law*

When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

"Interference with law enforcement" under K.S.A. 2020 Supp. 21-5904(a)(3) is "knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty."

A finding of guilt on this charge requires the State to prove each element. *Chandler*, 307 Kan. at 669 ("The State must prove each element of an offense."). In *State v. Brown*, 305 Kan. 674, 690, 387 P.3d 835 (2017), the Kansas Supreme Court held that the elements of this offense—specifically referencing K.S.A. 2015 Supp. 21-5904(a)(3)—are: (1) an identified law enforcement officer carrying out some official duty; (2) the defendant knowingly and willfully obstructed or opposed the officer; and (3) the defendant knew or should have known that the person being opposed was a law enforcement officer. In addition to these statutory elements, the *Brown* court indicated that it is also a requirement that the defendant's act "'substantially hindered or increased the burden of the officer in carrying out his official duty.'" 305 Kan. at 690. Haley argues that there was insufficient evidence produced at trial to support a finding that he hindered Meyers in the performance of his official duty of arresting him.

8

*Analysis*

To support his argument that the evidence at trial did not support a finding that he hindered Meyers in performing the official duty of arresting him, Haley asserts:

> "The testimony from Meyers at trial was that Haley was under arrest at the instant that Haley made contact with him while attempting to exit the detention area. If, at that point, Haley was under arrest, nothing Haley subsequently did could have hindered Meyers in arresting Haley because, by Meyers' own admission at trial, Haley was already under arrest."

On review, this court must determine, after reviewing all the evidence in a light most favorable to the prosecution, whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *Chandler*, 307 Kan. at 668. Viewing the evidence in the light most favorable to the State, a rational fact-finder could have concluded that Haley substantially hindered Meyers in carrying out his official duty of arresting Haley. The videos show that Haley made physical contact with Meyers as Haley tried to flee from the holding cell. Haley refused to follow the officers' commands and vigorously resisted being placed in handcuffs with the result being a somewhat extended altercation. Further, Haley admitted to resisting being handcuffed when he responded to the State's question, "Did you physically resist being handcuffed?"—to which Haley responded, "Absolutely." Viewing all of the evidence in a light most favorable to the State, a rational fact-finder could have concluded that Haley substantially hindered Meyers in carrying out his official duty of arresting Haley based on Haley's resistance to being handcuffed.

Haley's argument is based on the sole premise that he was under arrest at the moment he ran into Meyers. Haley essentially asserts that at that instant he was under arrest and that nothing he did after that point in time should be considered since he was

9

already under arrest. Haley is arguing this court should not consider any evidence showing that he resisted being handcuffed. He asserts that "the jury would not and should not have considered the attempts to handcuff Haley" because it was never instructed to determine whether handcuffing Haley was part of Meyer's official duty. This is an extremely narrow view of what constitutes an arrest. Haley wants this court to believe that an arrest is one instant in time rather than a process which includes submitting to authority and being taken into custody. He provides no authority to support his definition of arrest.

The Code of Criminal Procedure supports a broader view of what constitutes an arrest than Haley would like us to believe. K.S.A. 22-2405(1) indicates that an arrest is made by either an actual restraint of the person arrested or by that person's submission to custody. Moreover, this court has considered resistance to being handcuffed when an officer was trying to arrest a person as evidence supporting a conviction for interference with law enforcement. See *State v. Harris*, No. 116,129, 2017 WL 2899730, at *5 (Kan. App. 2017) (unpublished opinion). An essential part of an arrest is submission to law enforcement authority. Clearly, Haley had no intention of submitting to law enforcement and ultimately had to have their authority impressed upon him.

After reviewing all of the evidence in a light most favorable to the State, a rational fact-finder could have concluded that Haley substantially hindered Meyers in carrying out his official duty of arresting Haley based on the resistance to being handcuffed. There was sufficient evidence to support Haley's conviction for interference with law enforcement.

10

II.     *The district court did not abuse its discretion when it denied Haley's request to represent himself at trial.*

During the State's case-in-chief, after the State's first witness had already testified and during direct examination of the State's second witness, Haley asked the district court to allow him to represent himself. On appeal, Haley argues that the district court abused its discretion when it denied his request.

On the first day of trial, during the direct examination of the State's second witness, court recessed so the State could ensure that the video exhibit would work properly. The jury left the courtroom for the recess, and during the break Haley approached the judge in the bathroom. Haley asked the judge "what he needed to do to complain about [his counsel's] ineffective assistance." After court reconvened—outside of the jury's presence—the judge brought to everyone's attention what had transpired during the break and gave Haley a chance to speak his mind in the proper forum, rather than the bathroom. The discussion proceeded as follows:

"THE DEFENDANT: Anyway, I feel like there should be more cross-examination questions, more development notes and communication between me and Ms. Esparza, more—there's no pretrial motion written at all, there's no Motion to Suppress or whatever.

"THE COURT: You want her to file something with no basis?

"THE DEFENDANT: Nothing was filed, basis or no basis.

"THE COURT: What if there's nothing to file, sir?

"THE DEFENDANT: I believe there is.

"THE COURT: Tell me what it is your legal basis what you believe should be filed at this time.

"THE DEFENDANT: Well, I believe that Motion to Suppress should be put in.

"THE COURT: Why? What basis?

"THE DEFENDANT: Based on how many people touched the baggie. Each one that touched that baggie, switch it, put it in their pocket, make sure they didn't pull out something different. I never got to test it, the drugs, only got one test. We didn't test the

11

drugs. We didn't get to test it ourselves. It just came back from the lab a couple of weeks ago. I mean, why didn't we get an independent test? There's a lot that could be done that I feel like hasn't been.

"THE COURT: All right. Ms. Esparza, do you want to address this in any way or do you want me to just rule?

"MS. ESPARZA: Well, Judge, I did file pretrial motions, just two of them, my standard Motion in Limine and Motion for Transcript. I discussed this with Mr. Haley. I don't believe there's a basis for pretrial motions, and I'm not going to be communicating with him during the witness' testimony. I need to have my focus on that. It's very—it's a hard position to be in at this stage in the proceedings and have Mr. Haley apparently want me removed. Once a client has asked for that, it's hard, as defense counsel, to keep going.

"THE COURT: Well, keep going. Okay?

"There's no basis for a Motion to Suppress. There just isn't. And what sort of pretrial motions and legal bases there is, is the—that's the area of the expertise of the attorney, not you.

"THE DEFENDANT: And so the next thing would be details. Detail orientation when we were doing jury selection. She couldn't remember the names of the people. She had the chart. Those things are very important, critical details, and it makes me nervous that my hands are in somebody else's—

. . . .

"THE COURT: She handled that fine. That's—there's 24 people in the box. Most people don't have that sort of memory. They have to look at the sheet.

"THE DEFENDANT: She had it and still messed it up. That's why I want to make sure we're not messing up super details. It's critical at this point.

"THE COURT: Everything is fine.

"THE DEFENDANT: I want to go pro se.

"THE COURT: You what?

"THE DEFENDANT: I want to go pro se.

"THE COURT: You want to represent yourself at this stage?

"THE DEFENDANT: Yes.

"THE COURT: All right. I would advise against that, sir.

"THE DEFENDANT: That's not going to be any different because I get to ask the questions that need to be asked and she can be co-counsel.

12

"THE COURT: I need to go research that real quickly to see how to handle that. Sir, I guarantee you I know more about criminal law than anybody in this courtroom, I'm guessing. Here's what I'm saying to you. I certainly know more than you about this. I would not represent myself. I suggest you not do that. You're not going to be able to cross-examine the witnesses effectively, you're not going to be able to make closing argument effectively, probably is what I'm guessing. You have the right to represent yourself. I don't know. I'll have to research. I've never had anybody up and decide they want to do this in the middle of trial.

"THE DEFENDANT: Without effective counsel, I'm going to have to do it myself. That way, I feel like all the bases I—if I'm going to have to do it myself. If I can't have effective counsel, I'm going to have to do it myself.

"THE COURT: I'm going to take a short recess and look that information up.

After a brief recess the court continued:

"THE COURT: Thank you. Please, be seated. Go back in open court, outside the presence of the jury. Both attorneys are here and defendant, Mr. Haley, is here.

"The right of self-representation has been found to be unqualified prior to trial if the defendant does not ask to represent himself or herself before trial starts. District court's denial of such request showing abuse of discretion. Of course, it says I can do it if I wish. And in considering the defendant's motion for self-representation, I'm supposed to consider the reasons for the motion for self-representation. Those reasons are not filing a Motion to Suppress, which I'm still not seeing any basis for that. I set the prelim. Should be noted. Been through the file. I'm not saying anything close to I think any filing of a Motion to Suppress would be frivolous to be quite frankly that's the chief reason and communication during the trial, which she's supposed to be paying attention to. So given those reasons, the quality of Mrs. Esparza's representation that I've seen her for years here in this courtroom, which has been good, very good, the length of the stage of proceedings, it's not going to be a lengthy trial, but we are in the middle of trial, probably a good partway through the State's case. This already caused disruption and delay. And probably would cause more disruption and delay, not to mention, I believe the jury would be confused. I don't think it would be in your benefit to do that at this point. I'm afraid what conclusions they would draw if you did that. So I'm going to deny your motion for self-representation at this time.

13

"THE DEFENDANT: Your Honor, unequivocally, I want to represent myself.

"THE COURT: I heard that. And you've said it today unequivocally, but it is during the middle of trial. So I'm denying the request.

"All right. Let's bring the jury in. I should state my case law there, *State v. Cromwell*, Supreme Court Kansas case, 253 Kan. 495."

*Standard of Review and Applicable Law*

Although a defendant has a right to self-representation, that right is unqualified only if the defendant asserts the right before trial. *State v. Cromwell*, 253 Kan. 495, 505, 856 P.2d 1299 (1993). If a defendant does not ask to represent himself before the trial starts, the district court has discretion on whether to grant or deny the defendant's request for self-representation. In exercising that discretion, a district court should balance the alleged prejudice to the defendant with any disruption of the proceedings, inconvenience and delay, and possible jury confusion. The district court should also consider the reason for the request and the quality of defense counsel's representation. On review, this court determines whether the district court abused its discretion. See 253 Kan. at 505 (concluding "[o]ur consideration of the record leads us to conclude that the court, in balancing the above factors, did not abuse its discretion in denying defendant's motion for self-representation").

Haley cites *City of Arkansas City v. Sybrant*, 44 Kan. App. 2d 891, 241 P.3d 581 (2010), for the standard of review and for several statements of law throughout his argument. However, that case is distinguishable and is not applicable here. There, the defendant made a request for self-representation on the morning of trial *before jury selection began*. In reaching its ultimate conclusion, the *Sybrant* court applied both *State v. Cuddy*, 22 Kan. App. 2d 605, 921 P.2d 219 (1996), and *Cromwell*. *Sybrant*, 44 Kan. App. 2d at 902-03; see *Cuddy*, 22 Kan. App. 2d at 609-10 (providing considerations for district court when defendant makes request for self-representation when parties were empaneling jury); see also *Cromwell*, 253 Kan. at 504-05 (providing considerations for

14

district court when defendant makes request for self-representation during trial). Haley made his request during trial.

The Kansas Supreme Court applied *Cromwell'*s abuse of discretion standard in *State v. Collins*, 257 Kan. 408, 415-16, 893 P.2d 217 (1995), another case in which the defendant made a request to represent himself during trial.

In *Collins*, the defendant had an initial court-appointed attorney that the district court ultimately dismissed based on both the defendant's motion to dismiss and the attorney's motion to withdraw. The defendant assured the court that he would retain his own counsel, but because he never did, the court appointed another attorney to represent him. His second court-appointed attorney was also ultimately dismissed based on the attorney's motion to withdraw. At that point, the defendant again assured the court that he would retain his own counsel. The court proceeded to appoint a third attorney to serve as Collins' counsel—who represented him through trial. On the second day of trial, midway through the State's presentation of its case, defense counsel informed the judge that the defendant was not satisfied with his representation and wanted him to withdraw. Collins' reasons for this request were that defense counsel had failed to address certain discrepancies in the testimony of one of the witnesses, he was afraid defense counsel would not call his daughter to testify, and his relatives who were present believed defense counsel was not representing him properly.

In response, the judge reviewed the history of the defendant's case and noted the deterioration of the defendant's relationships with both of his two prior attorneys and his failure to hire his own counsel when he had assured the court he would. The judge also noted the "considerable experience" of his current defense counsel, noted that defense counsel was competent to defend him, and noted that the defendant had not expressed dissatisfaction until the second day of the trial. 257 Kan. at 412-13. The judge denied the

15

defendant's motion. At that point, defense counsel informed the court that the defendant wished to represent himself, and the judge denied his request.

On appeal, the *Collins* court applied *Cromwell* and found that the district court did not abuse its discretion in denying the defendant's request for self-representation, stating:

> "Collins' assertions that the trial court 'failed to exercise any discretion whatsoever' and 'completely failed to undertake any query' concerning Collins' request to proceed pro se are incorrect. Collins ignores the court's previous lengthy discussion of the history of Collin's case, the considerable experience and quality of Collins' trial counsel, and the court's dissatisfaction with Collins' reasons in considering Collins' request that another attorney be appointed to represent him, which immediately preceded Collins' request for self-representation. In his request to proceed pro se, Collins expressed no additional reasons beyond those previously rejected as insufficient to cause the court to allow [defense counsel] to withdraw. Under the circumstances, the trial court was not required to reiterate its reasons for refusing to allow the attorney to withdraw moments later, when Collins requested to represent himself.
>
> "In this case, Collins did not assert his right to self-representation until the second day of trial, midway through the State's presentation of its case. The parties had conducted voir dire; the State had made its opening argument, and four witnesses, including the victim, had completed their testimony. As in *Cromwell*, granting Collins' request for self-representation could well have been disruptive, caused undue delay, and confused the jury. The trial court did not abuse its discretion in denying Collins' request for self-representation." *Collins*, 257 Kan. at 415-16.

*Analysis*

The district court did not abuse its discretion in denying Haley's request for self-representation. First, the district court balanced the factors set forth in *Cromwell*, noting that they were in the middle of trial, that the request had already caused a disruption and delay, that it would probably cause more disruption and delay, and that the court believed the jury would be confused. See 253 Kan. at 505.

16

The court considered the reasons for the request. Like the defendant in *Collins*, Haley did not initially make a request for self-representation. Haley initially asked the judge what he needed to do to complain about defense counsel's ineffective assistance. The judge responded to this by allowing Haley to explain the instances that he believed amounted to ineffective assistance of counsel. The judge considered, discussed, and rejected each of these allegations of ineffective assistance of counsel. Like in *Collins*, it was only after the judge rejected his arguments that Haley made a request for self-representation based on the same arguments. Haley indicated that he wanted to "go pro se" because "[w]ithout effective counsel, I'm going to have to do it myself." His request for self-representation was based on the same allegations of ineffective assistance of counsel he had just presented to the court. Considering the factual similarities with *Collins*, this court similarly concludes that the district court did not have to reiterate its reasons after it had already rejected them. In sum, the district court considered Haley's reasons for the request as required by *Cromwell*. See 253 Kan. at 505.

Finally, the district court considered the quality of defense counsel's representation. The judge noted "the quality of [defense counsel's] representation[—]that I've seen her for years here in this courtroom, which has been good, very good." *Collins* demonstrates that merely mentioning defense counsel's experience is sufficient to conclude that the district court considered the quality of counsel's representation as required by *Cromwell.* See *Collins*, 257 Kan. at 412-13, 415; see *Cromwell*, 253 Kan. at 505.

The district court did not abuse its discretion in denying Haley's request for self-representation.

17

III.     *The district court did not commit reversible error by advising Haley of his right to testify.*

In his final issue on appeal, Haley presents what is essentially an alleged trial error. The alleged error occurred after the State had rested its case and defense counsel informed the district court that Haley wanted to testify in his own defense. According to Haley, the district court then committed reversible error when it advised him, sua sponte, of his right to testify because the court's comments influenced him to waive his right against self-incrimination. He asserts that he then testified and made self-incriminating admissions.

Haley's argument is based on the following exchange:

"THE COURT: All right. Please, be seated. We're back in open court outside the presence of the jury. Both the attorneys and the defendant are present.

"Ms. Esparza, is the defendant going to present any evidence?

"MS. ESPARZA: Your Honor, the defendant wants to testify in his own defense.

"THE COURT: All right. Mr. Haley, you understand that you have the absolute right to testify. That's your constitutional right to get on the stand and testify. *It's also your constitutional right not to testify*. The decision whether or not to testify is your decision. You can consult with your attorney whether it's wise or good strategy or not, but ultimately that decision is one of those decisions that is the defendant's decision. You do understand you do have the right not to testify?

"THE DEFENDANT: Yes, sir.

"THE COURT: Okay. And that's a constitutional right. And I would—actually, if you did exercise that particular right, I would—if you wanted, I could tell the jury that they're not to use that against you. Let me read the instruction. And this won't be relevant after you testify, but if you chose to exercise your Fifth Amendment privilege not to testify, I would tell the jury this, if you ask me to.

"A defendant in a criminal trial has a constitutional right not to be compelled to testify. You must not draw any inference of guilt from the fact that he did not testify and you must not consider this fact in arriving at your verdict.

18

"All right. Still want to testify?

"THE DEFENDANT: Yes, sir.

"THE COURT: All right. Very good." (Emphasis added.)

Haley omitted the sentence that is italicized when he recited this quotation in his brief.

*Preservation*

Hailey failed to provide a pinpoint reference to the location in the record on appeal where he raised this issue below, as required by Supreme Court Rule 6.02(a)(5). He instead argues that to the extent the issue presents a matter raised for the first time on appeal, this court should consider the issue because the following exceptions apply to the general rule that a new legal theory may not be asserted for the first time on appeal: (1) The newly asserted legal theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; and (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of a fundamental right. *State v. Johnson*, 309 Kan. 992, 995, 331 P.3d 1036 (2019). Haley does not indicate which fundamental right he would be denied if this court chose not to consider this issue for the first time on appeal, but he is likely referring to his fundamental right against self-incrimination. See *Taylor v. State*, 252 Kan. 98, 106, 843 P.2d 682 (1992) (identifying right against self-incrimination as fundamental right). As the State correctly asserts, even if an exception supports a decision to review a newly asserted claim, this court has no obligation to do so. "The decision to review an unpreserved claim under an exception is a prudential one." *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020). In order to provide a conclusive determination that no error occurred, we will address this issue.

*Standard of Review and Applicable Law*

Haley contends that there is no factual dispute as to what occurred at trial and, thus, this issue presents a question of law over which this court has unlimited review. However, as mentioned above, and as will be discussed further in the following section, the issue here is more appropriately framed as an issue of alleged judicial comment error. See *State v. Reyes*, No. 121,589, 2021 WL 520667, at *4-5 (Kan. App.) (unpublished opinion), *rev. denied* 313 Kan. 1045 (2021). This court reverses for judicial comment error only if it finds beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record. See 2021 WL 520667, at *5-6.

In a criminal case certain decisions are ultimately left to the defendant rather than the defense counsel—one being the decision on whether to testify in his or her own behalf. *State v. Carter*, 270 Kan. 426, 439, 14 P.3d 1138 (2000).

In *Taylor*, the Kansas Supreme Court held that a district court does not have a duty to ask a silent defendant whether he is waiving his right to testify, and—relevant here— the court then stated: "There is a danger that by asking a defendant if he is aware of his right to testify, a trial court may inadvertently influence a defendant to waive the equally fundamental right against self-incrimination." *Taylor*, 252 Kan. at 106 (adhering to ruling in *State v. McKinney*, 221 Kan. 691, 695, 561 P.2d 432 [1977], that it was neither necessary nor appropriate for district court to inquire into defendant's decision on testifying).

However, despite the statement in *Taylor* discouraging district courts from questioning defendants about their decision on testifying, the Kansas Supreme Court has yet to label the act as definite error. *Reyes*, 2021 WL 520667, at *4; see *State v. Breeden*, 297 Kan. 567, 586, 304 P.3d 660 (2013); *State v. Anderson*, 294 Kan. 450, 466-67, 276 P.3d 200 (2012).

In *Reyes*, a panel of this court presumed that a misleading or especially intrusive district court inquiry into a defendant's decision on testifying would be error. 2021 WL 520667, at *4. There, the district court asked the defendant about both her decision to testify as well as her decision to offer a guilt-based theory of defense to her possession with intent to distribute charge (her defense being admitting to possession but contesting the intent to distribute). The *Reyes* panel ultimately concluded that any error was harmless error and not subject to reversal. 2021 WL 520667, at *6.

The analysis that led the *Reyes* panel to its conclusion is relevant here. The *Reyes* panel first discussed whether to characterize the error as "judicial misconduct" (any judicial error that does not concern jury instructions or legal rulings that implicates the right to a fair trial) or "judicial comment error" (inappropriate statements a district court makes *in front of a jury* that are not jury instructions or legal rulings). 2021 WL 520667, at *4-5; see *State v. Boothby*, 310 Kan. 619, 626, 448 P.3d 416 (2019) (defining the general category of "judicial misconduct" and carving out "judicial comment error"). The *Reyes* panel ultimately opted to apply the "judicial comment error" standard despite the discussion at issue being made outside of the jury's presence. It was reasoned that the district court's discussion with the defendant directly impacted the trial evidence and, therefore, what the jurors would hear in deciding the case. 2021 WL 520667, at *4-5. Assuming for the sake of argument that Haley's assertion that the district court's comments influenced him to testify is true, then the court's comments similarly would have impacted what the jury heard in deciding the case. Accordingly, this court will also apply the "judicial comment error" standard. See 2021 WL 520667, at *4-5.

The *Reyes* panel then applied the two-step analysis ("error and prejudice") that the Kansas Supreme Court set forth in *Boothby* for evaluating claims of judicial comment error: (1) asking whether the challenged statement falls outside of what a district court may properly say and (2) if so, asking whether the error substantially prejudiced the

21

defendant's right to a fair trial. *Reyes*, 2021 WL 520667, at \*4; see *Boothby*, 310 Kan. at 627. If the defendant establishes a judicial comment error, the *Reyes* panel noted the State then has the burden to show a lack of prejudice. The State's burden would be to show beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record. *Reyes*, 2021 WL 520667, at \*4; see *Boothby*, 310 Kan. at 627.

Applying the first step, the *Reyes* panel concluded, without deciding, that the exchange amounted to judicial comment error. *Reyes*, 2021 WL 520667, at \*5. After presuming error, the *Reyes* panel applied the second step, by contemplating whether it could say beyond a reasonable doubt that the exchange between the district court and the defendant did not affect the outcome of the trial in light of the entire record. In applying the second step, the panel first considered the defendant's argument that the district court's comments influenced her decision to testify and caused her to forfeit her right against self-incrimination. The panel indicated that it was not persuaded by this argument because, according to the record, the defendant had already made her decision to testify when the district court asked her about that decision. The record indicated that she made the decision to testify before the trial started. The *Reyes* panel ultimately concluded that even if the court's comments did influence the defendant to testify, any error still would have been harmless in light of the State's overwhelming evidence against her. 2021 WL 520667, at \*5-6.

In *State v. Wise*, No. 122,909, 2021 WL 2753979 (Kan. App. 2021) (unpublished opinion), *petition for rev. filed* July 12, 2021, a panel of this court relied on *Reyes* to decide the same issue under facts similar to those presented in this. The State filed a Rule 6.09 (2021 Kan. S. Ct. R. 40) letter of additional authority notifying this court of the relevance of the *Wise* decision. Although *Wise* is not binding, it provides persuasive authority for this court to follow.

In *Wise*, after the district court excused the jury, the district court asked whether the defendant was going to testify, which defense counsel confirmed. The judge then asked the defendant if he understood that it was his decision whether to testify and confirmed that it was still Wise's decision to go ahead and testify. The panel noted that the judge's questions were not misleading or intrusive and summarized the exchange as the defendant indicating that he planned to testify, the district court asking him a few questions without commenting on trial strategy, and the defendant reaffirming his choice. Ultimately, the panel was not persuaded that the district court influenced the defendant's decision to testify and held that the court's statements were harmless error. 2021 WL 2753979, at *2.

*Analysis*

In the present case, Haley's counsel informed the district court, after the State had rested its case, that Haley wanted to testify. The court then told Haley that he had both a constitutional right to testify as well as a constitutional right not to testify and that the decision was his. The court correctly explained to Haley that a decision not to testify could not be considered by the jury. After advising Haley of these rights, the judge asked Haley if he still wanted to testify, and Haley reaffirmed his choice.

Applying the first step, the district court's questions here were similar to the judge's questions in *Wise*, which the *Wise* panel described as not misleading or intrusive. The comments were an accurate statement of the law. They were not intrusive and they emphasized his right not to testify as much or more so than his right to testify. The court's comments were not error as it is described in *Reyes*. See 2021 WL 520667, at *4 (presuming that a "misleading or especially intrusive district court inquiry would be error").

23

We are unpersuaded by Haley's argument that the district court influenced him to testify and conclude the court did not err when advising Haley of his rights to testify. See *Wise*, 2021 WL 2753979, at *2.

Affirmed.