NOT DESIGNATED FOR PUBLICATION

No. 125,854

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ISAIN M. LOPEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; KENDRA S. LEWISON, judge. Oral argument held February 4, 2025. Opinion filed April 11, 2025. Reversed and remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., GARDNER and HURST, JJ.

PER CURIAM: After a trial at which neither defendant nor defense counsel was present, the jury convicted Isain M. Lopez of aggravated kidnaping, aggravated battery, robbery, aggravated domestic battery, and criminal threat, but acquitted him of several other crimes. After a series of discussions about Lopez' requests for new counsel, continuances, and self-representation, the district court held Lopez' trial in absentia and without defense counsel. Lopez appeals his convictions and sentence, arguing the district court violated his rights to counsel and to present a defense, wrongly refused him a continuance and voluntary absence from voir dire, and abused its discretion by denying

1

his motion for a new trial. He also alleges instructional, prosecutorial, and cumulative errors. We agree that the record fails to show that Lopez' waiver of counsel was knowingly made. Finding structural error, we reverse and remand for a new trial.

*Factual and Procedural Background*

In December 2020, the State charged Lopez with aggravated kidnapping, aggravated domestic battery, and domestic battery based on acts that Lopez reportedly committed against his ex-girlfriend, H.C., over two days. The State later amended the charges to two counts each of aggravated kidnapping, aggravated battery, robbery, and criminal threat, and single counts of attempted rape and aggravated domestic battery.

*Appointment of Counsel and Initial Pretrial Proceedings*

The district court appointed Phylemon Yau to represent Lopez in May 2021. Yau represented Lopez at his initial appearance, preliminary hearing, and arraignment. Yau also successfully moved to continue Lopez' trial. The district court initially scheduled the trial for October 25 through 29, 2021, but continued it to February 14 through 18, 2022.

In November 2021, Yau moved to withdraw as counsel, citing conflict of interest allegations that Lopez had made in a recent motion. The district court allowed Yau to withdraw and appointed Jeff Adam to replace him.

After Adam's entry of appearance, the State filed a K.S.A. 60-455 motion to introduce evidence of other crimes and a motion to introduce evidence of gang membership. Adam filed responses and represented Lopez at a hearing on the motions. With some limitations, the district court granted the State's motion to introduce evidence of Lopez' possible gang membership but denied its request to introduce evidence of prior bad acts.

2

*Requests for Continuances and Pro Se Representation*

The parties submitted proposed jury instructions at the end of January and the beginning of February 2022 and appeared for voir dire on February 14. The trial was scheduled to begin the next day. Before calling the prospective jurors into the courtroom, the district court allowed Lopez to address the court, as he had requested earlier that day.

Lopez explained that he was dissatisfied with Adam's representation because:

- Lopez had not seen the discovery and Adam had not discussed any of those materials with him;
- Adam had visited him "less than" a "handful of times;"
- Adam had not investigated his case or asked him any questions about his version of events; and
- Lopez had filed a disciplinary complaint against Adam.

Lopez also requested a continuance to allow Adam more time to discuss his case with him and to properly prepare for trial.

The district court stated that Lopez could meet with Adam that evening to go over the discovery. Adam informed the district court that he had already made that offer to Lopez, who had refused it. Adam told the court that he was prepared to go to trial as scheduled. As for the discovery, Adam noted that Yau had obtained most of it before Adam had been appointed to represent Lopez. Adam explained that the only additional materials were a report and a video of H.C.'s interview with police, and he had provided the report to Lopez as soon as he had received it.

The State objected to Lopez' continuance request, arguing that Lopez should have raised his concerns earlier and that Lopez was making allegations against Adam for the

3

purpose of delaying trial. The State also argued that Adam's conduct throughout the pretrial proceedings showed that he was ready for trial.

Lopez clarified that he was not suggesting that Adam "[was] not a good attorney." He instead believed that Adam had been given insufficient time to prepare for the trial, and he needed more time to review the evidence with Adam.

The district court tried to assure Lopez of Adam's skill and preparedness, stating that "[i]f [Adam] tells the Court he's ready for trial, he's ready for trial." It also told Lopez he should have raised his concerns earlier, noting that the parties appeared for a Zoom hearing the previous Friday. Lopez explained his delay—he had mailed his complaint about Adam's representation to the district court on February 6 but wanted to present his argument in person rather than over Zoom. He also claimed that "at this point," his family wanted to hire an attorney and was just "a few hundred short" of being able to do that. He also stated that if he were not granted additional time to secure retained counsel, he wanted to proceed pro se. Otherwise, he would refuse to attend trial because he had not received effective assistance of counsel.

### *The waiver of counsel*

The district court told Lopez that it was "simply . . . too late" to allow a continuance to retain counsel but he could choose to represent himself. The district court explained that it was "not a good idea" to choose self-representation. Lopez responded: "I understand. That's my decision, though." The district court then warned Lopez:

> "THE COURT: But the law is very particular. Things have to be done a certain way, particularly in trial. It's highly technical. If you are representing yourself there may be objections that could be made that you don't know about, there may be technical issues that you do not know about and as the judge, I am not allowed to give you legal advice or

4

to really help you through the process. You would be completely on your own. So do you think that you are capable of adequately representing yourself?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Okay. Because I know you have a passion for the subject obviously, because you were talking about your future, but having a passion is not going to be enough to get you through the trial.

"THE DEFENDANT: I understand that, ma'am.

"THE COURT: Okay. Well, let's talk about what we would need to do to waive your counsel.

"Has anyone threatened or promised you or anyone close to you to get you to waive your right to counsel?

"THE DEFENDANT: No, ma'am.

"THE COURT: You're in custody, so—and you appear to be in a right frame of mind this morning, but are you under the influence of any drugs, alcohol, or mood-altering substances?

"THE DEFENDANT: Definitely not, ma'am.

"THE COURT: Have you ever been determined to be mentally ill, incompetent, or otherwise unable to take care of your own affairs?

"THE DEFENDANT: No, ma'am.

"THE COURT: And you do understand your right to counsel. You absolutely have a right to counsel, and in this case though, that would be Mr. Adam.

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Do you understand that it's not the Court's role to assist you with representation?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Do you understand that it might be in your best interests, and I would go so far as to say it is in your best interests to be represented by an attorney?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: And considering all of the information that we've discussed today, is it your wish to proceed without an attorney?

"THE DEFENDANT: Yes, ma'am."

After this inquiry, the district court accepted Lopez' waiver of his right to counsel and permitted Lopez to represent himself.

The district court then asked Adam if he was willing to serve as standby counsel. Adam explained that he had never served as standby counsel during a trial and he resisted the appointment because Lopez had stated his dissatisfaction with his representation. Adam also suggested that if Lopez were removed from the courtroom during the trial, he would be unsure that he could step in to try the case in Lopez' absence. He also noted some concerns about turning over certain materials and the volume of discovery to Lopez before trial.

Lopez objected to Adam's appointment as standby counsel. Yet the district court, unpersuaded by Lopez and Adam, appointed Adam as standby counsel.

The court then turned its attention to the jury questionnaires and said that Lopez would have access to redacted versions of the questionnaires in time for the afternoon session. But Lopez interrupted, showing his surprise at being required to go forward with the trial:

> "THE DEFENDANT: You guys are going to give me one day only to prepare for my trial?
> "THE COURT: This is your choice, Mr. Lopez. You have an attorney prepared to represent you.
> "THE DEFENDANT: This is my life. I mean, you guys have given the State months to prepare for trial and you guys are giving me all of my evidence in my case, giving me one night to go basically back to Riley County Jail with limited resources and prepare for a trial.
> "THE COURT: Mr. Lopez, after your relationship broke down with Mr. Yau, I watched very carefully every time we were in court to see if there was any animosity between the two of you. I watched your body language. I watched the way that you communicated. I had no sign there was any problem, whatsoever. I could only be left with the impression that this is a ploy to delay the trial. If there was a problem, you should have mentioned it earlier. You knew we were set to start the trial today, and so you will be given the records and you will be allowed to represent yourself, if that's your

6

choice. Mr. Adam will be there to represent you, your highly qualified and prepared attorney.

"If you choose to use him as standby counsel as opposed to being as—as opposed to counsel that is your choice, but we are proceeding with the trial. We will get you your records with the information redacted from it and you will have a list of the jurors with their personal information redacted this afternoon, for you to pick a jury.

"THE DEFENDANT: Well, then I would like to go on record that just you guys can carry on the trial absentee, because if you guys aren't giving me any amount of time to prepare for my trial, I have none of my evidence, whatsoever, don't see how that's not a conflict of interest of its own. I don't have to be disrespectful to create a conflict of interest with my attorney. I'm just a respectful person. I see that there's a conflict of interest. No reason to disrespect him.

"THE COURT: Okay.

"THE DEFENDANT: There's no reason for me to be hostile or have animosity towards him. There's no reason for that. He's just hasn't met my standards, I believe, I guess.

"THE COURT: All right. Well, there is—much of what Mr. Adam has in his possession, for instance, all those medical records he was not allowed to turn over to you, okay? Because of a protective order. That is just the way it works.

"THE DEFENDANT: And the camera footage? I haven't seen that either, the camera footage, any medical records, my discovery. Any statements made I haven't got transcribed. Nothing. I have all the evidence right here that I have is prelim. That's it.

"THE COURT: You will have a copy of everything that will be used at trial, I mean, all of the records.

"THE DEFENDANT: Okay."

The district court then began to select a jury. Lopez asked for permission to leave so he could prepare for trial, noting that he needed to review several hours of video footage before the next day. The district court responded that it could not proceed without Lopez present and denied his request to leave the courtroom.

*Additional Discussions Regarding Representation and Appearances*

When it came time for Lopez to question the first venireperson, Lopez stated that he did not understand how to proceed and asked again to leave. He also asked if he could consult Adam. The district court granted this request and called a recess. When Lopez returned to the courtroom, he again objected to Adam's appointment as standby counsel and threatened to refuse to participate in the trial. Over Lopez' objections, the district court kept Adam as standby counsel and directed the parties to continue with voir dire.

Lopez continued to voice his confusion and discomfort with participating in the jury questioning. He then conceded that he was "willing to proceed with Mr. Adam even though [he] [had] a conflict of interest." The district court asked whether Lopez wanted to be represented by Adam and stated that Adam's representation would not be forced on him. Lopez said that he would accept Adam's representation but maintained that they had conflicting interests. But Adam then expressed his concern about representing Lopez since Lopez continued to allege that a conflict existed. Lopez, however, suggested that he had no option other than to proceed with Adam representing him because the district court refused to give him time to prepare as a pro se defendant. The district court again reminded Lopez that he had decided to proceed pro se and that Adam could not act as standby counsel if Lopez continued to claim a conflict.

Lopez again asked to leave the proceedings, and Adam asked for clarification about his role. The district court explained that Adam was still standby counsel but could not represent Lopez in his absence, so if Lopez absented himself during trial, Adam could not take over his defense. The district court similarly told Lopez that he needed to finish voir dire because Adam could not take over if he left.

Voir dire resumed and Adam remained in the courtroom until the district court dismissed the jurors for lunch. When Lopez refused to return after the lunch recess, the district court excused the jurors until the next morning.

*The conference with the parties*

The district court then discussed with the parties how to proceed. They discussed whether Lopez could refuse to attend trial and if so, whether counsel needed to be appointed to defend against the State's case in Lopez' absence.

The State argued that if the district court made appropriate findings, Lopez could waive his right to appear at future proceedings even without counsel appearing on his behalf. The State also argued that Lopez had failed to establish justifiable dissatisfaction with Adam's representation and suggested that the district court rescind his waiver of counsel. The State reasserted that Lopez' actions were simply ploys to delay the proceedings. In support, the State played a recording of a recent telephone call between Lopez and his brother, and argued it proved that Lopez' actions were fraudulent.

Adam moved to withdraw as counsel. He explained that he had spoken with the disciplinary administrator's office and had told them he was unsure whether a genuine conflict existed, yet they had advised him to withdraw. The administrator suggested a potential cause for concern if Lopez continued to allege ineffective assistance of counsel or tried to use Adam to perpetrate a fraud on the court.

Lopez challenged the State's characterization of his phone call, arguing the conversation showed that Adam had not contacted or worked with him enough. Lopez still believed that Adam was ineffective and again requested his removal. Sometime during this conference, the district court permitted Adam to withdraw as standby counsel.

9

Lopez also insisted that although he had waived his right to Adam's representation, he had not "forfeit[ed] [his] right to representation" entirely. He also stated that he wanted to appear at future proceedings but had not been given enough time to prepare for trial. He insisted that if he were not granted a continuance to prepare a pro se defense, he should be allowed to waive his right to be present at trial.

But the district court denied Lopez a continuance, finding that would "essentially crippl[e] the Court's ability to get these cases to trial in a timely manner." The district court found Lopez's actions were manipulative but fell short of trying to perpetrate a fraud on the court.

The district court also refused to rescind Lopez' waiver of counsel and found that even without appointed counsel, Lopez could lawfully refuse to attend future proceedings. The district court indicated its hesitancy to allow the State to proceed at trial without anyone at the defense table. But after a brief discussion regarding Lopez' right to absent himself from proceedings, the district court accepted Lopez' waiver of his right to be present, told Lopez that his trial would begin the next day as scheduled, and encouraged him to attend.

*Jury Selection and Trial*

Lopez did not attend voir dire the next day, so the district court allowed the State to select a jury in absentia.

Before opening statements and outside the jury's presence, Lopez appeared for a short Zoom conference and confirmed that he had decided not to attend voir dire. He explained that he had not received his discovery until that day, about two hours after voir dire had commenced. The State explained that it had delivered the discovery to the jail at 5:40 p.m., the evening before. But jail officials had not delivered the materials to Lopez

until shortly before his Zoom appearance. Lopez objected again to the proceedings and confirmed that he would not attend trial. He argued that he had a right to be present at every stage of his trial and "never waived [his] right to trial" or his "right to counsel" and simply wanted effective counsel.

Lopez did not attend the two-day jury trial, nor did any attorney appear for him in any capacity. Thus, the State presented its case without objections or cross-examination of its witnesses, including H.C. The State also admitted several trial exhibits, including pictures of H.C.'s injuries, medical records, text messages, and surveillance videos.

The jury convicted Lopez of single counts of aggravated kidnapping, robbery, aggravated battery, aggravated domestic battery, and criminal threat. And despite Lopez' lack of defense, the jury acquitted him of attempted rape, as well as additional counts of aggravated kidnapping, robbery, and criminal threat.

*Posttrial Proceedings*

After trial, Adam filed a written motion to withdraw as counsel, stating: "The Defendant and counsel are not able to effectively communicate or convey ideas or strategies and counsel is not able to adequately aid in Defendant's defense. . . . The attorney-client relationship has deteriorated beyond repair and should be discontinued." The district court issued a written order granting that motion.

The district court then appointed Chris Biggs as counsel, and he moved for a new trial. At the evidentiary hearing on the motion, Lopez, Adam, and Yau testified. The district court denied the motion, finding no error. The district court found that Lopez' allegations about Adam's representation were not genuine, as he intended only to postpone the trial. It found that Lopez had failed to establish an actual conflict so he had not shown sufficient grounds to remove Adam and appoint new counsel. The district

11

court also found that it had adequately warned Lopez before accepting his waiver of counsel, but the district court acknowledged that it should have made it clearer that no continuance would be granted, whether or not Lopez waived his right to counsel.

The district court then sentenced Lopez. It imposed the middle number of months within the applicable sentencing range for each offense and ordered Lopez to serve his sentences consecutively for a total of 363 months of incarceration.

Lopez timely appeals, raising multiple claims of error.

*Did the District Court Err by Accepting Lopez' Waiver of Counsel While Denying His Motion for Continuance?*

Lopez raises multiple arguments on appeal, but we find one dispositive—his argument that his waiver of counsel was not knowingly or intelligently made. Lopez contends that he did not know the facts necessary to understand his case, and the district court did not tell him it would not grant a continuance to allow him to prepare his own defense for trial. As detailed below, we agree that the facts of record fail to show that Lopez' waiver of counsel was knowingly made.

*Standard of Review and Basic Legal Principles*

The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees criminal defendants the right to the assistance of legal counsel during all critical stages of a criminal proceeding. *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). The Sixth Amendment also implicitly includes a right to self-representation. *State v. Vann*, 280 Kan. 782, 793, 127 P.3d 307 (2006). But a criminal defendant may waive the right to counsel, so long as the waiver is voluntary, knowing, and intelligent. *State v. Trass*, 319 Kan. 525, 538, 556 P.3d 476

12

(2024). Thus, "to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits [associated with the right to counsel]." *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

An appellate court generally exercises unlimited review over questions involving a defendant's right to counsel. *State v. Bunyard*, 307 Kan. 463, 470, 410 P.3d 902 (2018). But the determination whether a waiver of the right to counsel was knowingly and intelligently made depends on the particular facts and circumstances of each case. *State v. Buckland*, 245 Kan. 132, 137, 777 P.2d 745 (1989). The State has the burden to show that an accused was advised of the right to counsel and that the waiver of counsel was knowingly and intelligently made. *State v. Youngblood*, 288 Kan. 659, 662, 206 P.3d 518 (2009). "A knowing and intelligent waiver requires that the defendant be informed on the record of the dangers and disadvantages of self-representation. The choice is to be made '"with eyes open.' [Citation omitted.]" *State v. Graham*, 273 Kan. 844, 850, 46 P.3d 1177 (2002).

Our Supreme Court does not require district courts to use a specific checklist in deciding whether a waiver of the right to counsel is knowing and intelligent. Instead, it applies this three-step framework:

> "First, a court should advise the defendant of the right to counsel and to appointed counsel if indigent. Second, the defendant must possess the intelligence and capacity to appreciate the consequences of his or her decision. And third, the defendant must comprehend the charges and proceedings, punishments, and the facts necessary for a broad understanding of the case.
>
> "To assure the defendant appreciates the consequences of waiving representation by counsel . . . the court [should] explain that the defendant will be held to the same standards as an attorney; that the judge will not assist in or provide advice about presenting a defense; and that it is advisable to have an attorney because many trial techniques, evidence rules, and the presentation of defenses require specialized training

and knowledge. [Citations omitted.]" *State v. Burden*, 311 Kan. 859, 863, 467 P.3d 495 (2020).

In reviewing the sufficiency of a waiver of the right to counsel, we examine the record as a whole. *State v. Kemmerly*, 319 Kan. 91, 98, 552 P.3d 1244 (2024). "At a minimum, the district court's inquiry should be sufficient to determine whether the defendant comprehends the nature of the charges, the significance of the proceedings, the range of potential punishments, and any additional facts essential to understanding the case." *State v. Allen*, 62 Kan. App. 2d 802, 808-09, 522 P.3d 355 (2022) (finding district court erred by asking only two questions to determine whether defendant appreciated consequences of waiving his representation by counsel).

*Erroneous Acceptance of Lopez' Waiver of Counsel*

The district court began its colloquy with Lopez about his request to represent himself (commonly described as a *Faretta* motion) by stating:

> "THE COURT: But the law is very particular. Things have to be done a certain way, particularly in trial. It's highly technical. If you are representing yourself there may be objections that could be made that you don't know about, there may be technical issues that you do not know about and as the judge, I am not allowed to give you legal advice or to really help you through the process. You would be completely on your own. So do you think that you are capable of adequately representing yourself?
> "THE DEFENDANT: Yes, ma'am.

The court then asked Lopez several questions relating to his intelligence and mental state—whether Lopez made his waiver based on any threat or promise, while under the influence of drugs or alcohol, or while mentally ill or incompetent.

It then asked the following to assure that his waiver was knowing:

14

"THE COURT: And you do understand your right to counsel. You absolutely have a right to counsel, and in this case though, that would be Mr. Adam.

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Do you understand that it's not the Court's role to assist you with representation?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Do you understand that it might be in your best interests, and I would go so far as to say it is in your best interests to be represented by an attorney?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: And considering all of the information that we've discussed today, is it your wish to proceed without an attorney?

"THE DEFENDANT: Yes, ma'am."

Lopez argues that his waiver was not knowingly and intelligently made for two reasons: The district court did not explain that it would not grant him a continuance if he chose to represent himself; and he lacked enough understanding of his case to enter a valid waiver—as Lopez had told the district court, he had not reviewed the evidence and was unprepared for trial, with or without the assistance of counsel.

No issue has been raised about Lopez' intelligence or mental state. His responses to the court's waiver inquiry and his interactions throughout the record establish that the defendant had sufficient intelligence and capacity to appreciate the known consequences of his waiver. See *Burden*, 311 Kan. at 868 (addressing mental state necessary for waiver). And the court's questions to Lopez about threats or promises, if he was under the influence of drugs or alcohol, or whether he was mentally ill or incompetent, coupled with the court's knowledge of his interactions with the court, show that his waiver was intelligently made.

Lopez' concerns on appeal assert that his waiver was not *knowingly* made. For a waiver of counsel to be effective, it must be knowingly made. "That is why the right to be advised of the perils of proceeding pro se is so important." *State v. Landeo*, No. 118,156,

15

2019 WL 3518513, at *14 (Kan. App. 2019) (unpublished opinion) (finding trial court failed to instruct Landeo about requirements and perils of proceeding pro se when allowing his attorney to withdraw). "The possession of legal knowledge and skills is not necessary to this waiver, but the defendant must be informed of the dangers and disadvantages of self-representation. [*Faretta*], 422 U.S. at 835." *State v. Young*, No. 64,629, 1990 WL 10859408, at *1 (Kan. App. 1990) (unpublished opinion).

We first address Lopez' assertion that the district court failed to warn him that it would not grant him a continuance if he waived his right to counsel. When Lopez first raised concerns about Adam's representation, he asked the district court to appoint substitute counsel or grant a continuance. When making his first continuance requests, Lopez argued that he needed more time to either prepare for trial with Adam or hire retained counsel. The district court suggested that Lopez discuss his case with Adam that evening but denied his request for more time. The district court likewise denied Lopez' request for additional time to hire retained counsel, telling Lopez that the time to do so had passed. The State argues that these statements by the court, coupled with the fact that the district court never said that it would grant a continuance, made it clear to Lopez that the court would not grant a continuance.

But the record is not as clear as the State contends. Directly after denying those continuance requests, the district court told Lopez that he could invoke his right of self-representation:

> "I am [going to] deny the continuance to retain counsel because it's simply just too late to do that. You do have the right to represent yourself. I can't stop you from doing that, but there are a few things I . . . want to go over with you, the first being that it's not a good idea to do that."

16

Lopez replied that he wanted to represent himself, so the district court warned Lopez about the drawbacks of self-representation, then accepted his waiver of counsel. But in doing so, the court did not tell Lopez that it expected him to proceed immediately with trial or that it would not grant any continuance.

Making sure that the defendant understood that no continuance would be granted even if he chose to proceed pro se would have alleviated our concern. Cf. *People* v. *Jenkins*, 22 Cal. 4th 900, 1038-40, 95 Cal. Rptr. 2d 377, 997 P.2d 1044 (2000) (trial court did not deprive defendant of due process by denying motion for continuance once it granted defendant's midtrial request to proceed as self-represented party because it advised defendant of perils including that no additional preparation time would be granted, and defense counsel had adequate preparation time and was serving as standby counsel); *Pierce v. McEwen*, No. EDCV09-0310-VAPJEM, 2016 WL 3746383, at *11 (C.D. Cal. 2016), *report and recommendation adopted*, No. EDCV09-0310-VAPJEM, 2016 WL 3683324 (C.D. Cal. 2016) (unpublished opinion) (trial court's denial of petitioner's request for continuance made immediately after his grant of pro se status was not arbitrary as to deny due process, as the trial court warned petitioner that it would not grant petitioner's request for continuance if it granted petitioner's request for self-representation); *People v. Gebreselassie*, No. A133350, 2015 WL 5146199, at *11 (Cal. App. 2015) (unpublished opinion) (finding no abuse of discretion in denying continuance because the district court had warned defendant that his trial date would not be continued "'whether you're ready to go or not,'" then granted defendant's motion to waive counsel, and appointed standby counsel), *as modified on denial of reh'g* (2015).

The district court then addressed the trial proceedings and stated that voir dire would proceed that afternoon, as scheduled. Lopez then realized, apparently for the first time, that he was expected to immediately participate in the proceedings pro se. He interjected and asked: "You guys are going to give me one day only to prepare for my trial?" This exchange shows that Lopez may have thought that the district court's

17

statement that he could choose to represent himself meant that he could get a continuance if he did so. Although the district court denied Lopez' argument that the trial should be delayed to allow him to retain counsel, the district court immediately then raised the option of proceeding pro se. Lopez could have reasonably, yet erroneously, understood that if he chose self-representation, he would be given a reasonable amount of time to review the evidence and prepare his defense. The sequence of events supports Lopez' argument that he did not understand a crucial consequence of his waiver of counsel—that he would be required to immediately represent himself in all phases of trial.

The court later acknowledged that it denied Lopez' request for a continuance again after Lopez chose to represent himself:

> "So we were stuck in a situation where Mr. Lopez had insisted—had an attorney who was prepared and ready to proceed but insisted on representing himself and then turned around and asked for a continuance because he wasn't ready to proceed.
> "Had I—I didn't really have a playbook for the situation at that time and I was, as I stated earlier, very caught off guard and not anticipating this issue. If I had it to do over I might go back and make it clear to Mr. Lopez that he wasn't going to get a continuance regardless, but at the same time I think really the tone and if you look at our conversation as a whole it was conveyed, it just—there was never any indication and the Court was very clear that we needed to go forward, that there were people waiting out in the hallway, that it was way too late to be making these changes."

But tones and tacit implications are not enough to show a proper waiver of counsel inquiry. See *State v. Solton*, No. 123,927, 2022 WL 7824450, at *6 (Kan. App. 2022) (unpublished opinion) (finding district court violated defendant's right to counsel by allowing him to represent himself at preliminary hearing without first obtaining knowing and intelligent waiver; finding "cobbled together pieces [of the record] are not the equivalent of a proper waiver of counsel colloquy"). And we must indulge every reasonable presumption against waiver of the right to counsel. *Kemmerly*, 319 Kan. at 96.

18

The trial judge's advisories to a defendant waiving his right to counsel must be in "'clear and unequivocal language.'" *Youngblood*, 288 Kan. at 663 (quoting *In re Habeas Corpus Application of Gilchrist*, 238 Kan. 202, 207, 708 P.2d 977 [1985]). A waiver of the right to counsel is "strictly construed." *State v. Allen*, 28 Kan. App. 2d 784, 791, 20 P.3d 747 (2001). The trial court did not give Lopez a clear choice between trying his case immediately represented by Adam, or trying his case immediately by himself. As Lopez had repeatedly indicated he was not prepared to start trial that day, the trial court could reasonably have determined that Lopez would seek a continuance in the event the court granted his *Faretta* request. Under the circumstances of this case, the court's failure to tell Lopez, when warning him about the perils of proceeding pro se, that he would not receive a continuance to prepare for trial if he chose to represent himself cuts strongly against a finding that his waiver was knowingly made.

Lopez' second argument is that he lacked the discovery and facts necessary for a broad understanding of the case. The record confirms that Lopez had repeatedly told the district court that he had not reviewed the evidence and lacked enough understanding of the facts of his case to proceed immediately pro se. See *Burden*, 311 Kan. at 863 (requiring court to make sure defendant understands "the charges and proceedings, punishments, and the facts necessary for a broad understanding of the case"). When discussing the possibility of appointing Adam as standby counsel, Lopez stated that "[Adam] might be prepared, but I have no idea what's going on . . . [in] my own case." He also explained that although he did not want Adam to represent him, he was amenable to the appointment of standby counsel because he was unsure how much evidence he would need to review. He claimed that he had not been "given any" evidence and that he did not know "if [he] would even be ready for [his] own [defense]." Cf. *State v. Calderon*, 270 Kan. 241, 253, 13 P.3d 871 (2000) ("The right to be present at one's criminal trial is a fundamental right. To be 'present' requires that a defendant be more than just physically present. It assumes that a defendant will be informed about the proceedings so he or she can assist in the defense."). The district court credited Adam's later testimony (during the

19

hearing on the motion for new trial) that Lopez had received most of the discovery. But even then, the court found that Lopez had not seen all the discovery, including some medical records and some videos. That Lopez had repeatedly told the court he was unprepared for trial gives some support for his allegations that he lacked some understanding of his case.

But our review of the record as a whole, see *Kemmerly*, 319 Kan. at 98, shows a much weightier reason for concern about Lopez' understanding of the case—the district court failed to ask about his understanding of the nature of the charges against him and the range of permissible punishments he faced, as *Burden* requires. 311 Kan. at 863. This was no mere misdemeanor trial. Lopez faced a host of felony charges: two counts each of aggravated kidnapping, aggravated battery, robbery, and criminal threat, plus single counts of attempted rape and aggravated domestic battery. His potential punishment was substantial. And even after the jury acquitted him of several felony charges, he was sentenced to over 30 years of incarceration.

Yet the district court never mentioned the charges against Lopez or his possible punishment in its waiver inquiry. Contra *State v. Roberts*, 13 Kan. App. 2d 485, 487, 773 P.2d 688 (1989) (trial court "painstakingly inquired into the matter by clearly advising Roberts of his right to counsel, by asking about defendant's educational background, by reviewing the nature of the charge and possible penalties, by explaining to Roberts the consequences of proceeding pro se, and by recommending defendant continue with representation"). At a minimum, the district court's inquiry should establish that the defendant comprehends the nature of the charges the State has brought against him and the range of potential punishments. *Buckland*, 245 Kan. at 138; *Allen*, 62 Kan. App. 2d at 808-09.

These omissions collectively convince us that the district court failed to make a sufficient inquiry under the third step of the waiver analysis. *Burden*, 311 Kan. at 863

20

(defendant must comprehend charges and proceedings, punishments, and facts necessary for broad understanding of the case). A trial court has a duty to conduct a waiver of counsel inquiry that sufficiently ensures a defendant's waiver is valid. "A waiver is an intentional relinquishment of a known right, made with full awareness of the effect." *State v. Daniels*, 2 Kan. App. 2d 603, 607, 586 P.2d 50 (1978). So a "trial court must make more than a routine inquiry when a defendant attempts to waive the right to counsel." 2 Kan. App. 2d at 607.

Because the district court did not adequately inquire into Lopez' understanding of the consequences of his waiver, including that no continuance would be granted, or into his general comprehension of the charges and potential punishment, the record fails to show that Lopez' waiver was knowingly made. The facts in the record as a whole fail to show that Lopez understood his right to counsel and the difficulties of pro se representation and knowingly and intelligently waived his right to counsel. Thus, the district court erred by accepting his waiver.

True, the district court faced a dilemma. As the United States Supreme Court has explained: "Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances." *Morris v. Slappy*, 461 U.S. 1, 11, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983). Lopez moved to represent himself just before voir dire began, while a theater full of people awaited jury selection during the Covid pandemic. What is more, the district court found that Lopez' requests for continuances were for the purpose of delay. "While a criminal defendant 'must be provided a fair opportunity to obtain counsel of his or her choice, this right cannot be manipulated to impede the efficient administration of justice.'" *Trass*, 319 Kan. at 537.

21

Still, Lopez' request to represent himself was untimely, so the district court could have denied it on that basis. See *Faretta*, 422 U.S., at 835 (finding request for self-representation asserted "weeks before trial" should have been granted); *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964) (decision to grant or deny continuance requested at start of trial or midtrial traditionally lies within broad discretion of trial court); *State v. Hallacy*, No. 122,431, 2023 WL 2941533 (Kan. App. 2023) (unpublished opinion) (finding no abuse of discretion by denying defendant's untimely day-of-trial request for self-representation), *rev. denied* 318 Kan. 1088 (2024); *Epps v. Oliver*, No. 2:22-CV-204-GMN-MDC, 2024 WL 967435, at *4 (D. Nev. 2024) (if the *Faretta* request is early enough to allow defendant to prepare for trial without need for continuance, request should be deemed timely); *Morgan v. Commonwealth*, No. 2023-SC-0045-MR, 2024 WL 1147463, at *4 (Ky. 2024) (finding defendant's request to represent himself, made after jury had been selected, was both untimely and equivocal, so no *Faretta* hearing was required). But the district court here did not deny Lopez' *Faretta* motion as untimely or manipulative or at all.

Instead, the district court conducted an inquiry related to Lopez' *Faretta* motion. Once the district court did so, it had the duty to adequately warn him of the perils of proceeding pro se, as was necessary to protect Lopez' constitutional rights. "'While we can understand, and perhaps even sympathize, with the frustration and exasperation of the district court judge, even well-founded suspicions of intentional delay and manipulative tactics can provide no substitute for the inquiries necessary to protect a defendant's constitutional rights.'" *Trass*, 319 Kan. at 546 (quoting *United States v. Welty*, 674 F.2d 185, 189 [3d Cir. 1982]).

22

*Structural Error*

The district court's violation of Lopez' Sixth Amendment right to counsel is structural error not subject to a harmless-error analysis. See *State v. Johnson*, 310 Kan. 909, 913-14, 453 P.3d 281 (2019); *State v. Jones*, 290 Kan. 373, 382-83, 228 P.3d 394 (2010) (A violation of the Sixth Amendment right to counsel constitutes structural error; "[e]rrors are structural when they 'defy analysis by "harmless-error standards"' because they 'affect[] the framework within which the trial proceeds.'"). "As a structural defect in the trial mechanism," the violation of Lopez' Sixth Amendment right to counsel requires automatic reversal of his convictions. *Trass*, 319 Kan. at 547.

Because remand for a new trial is required, we find it unnecessary to address Lopez' remaining arguments on appeal.

Reversed and remanded for a new trial.